**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL BRYANTON, GLENN REHAHN,
CHERYL MERRILL, RICHARD L. ROBINSON,
SERVICE EMPLOYEES INTERNATIONAL
UNION, LOCAL 517M, SEIU MICHIGAN STATE          Case No.
COUNCIL, LATIN AMERICANS FOR SOCIAL
AND ECONOMIC DEVELOPMENT (LA SED),
AMERICAN CIVIL LIBERTIES UNION                  HON.
OF MICHIGAN,

       Plaintiffs,

v.

RUTH JOHNSON, in her official capacity as
Michigan Secretary of State,

       Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

## INTRODUCTION

1.  Plaintiffs seek this court's intervention to avert an election day disaster in the making.
    Acting without any statutory authority and ignoring the procedural requirements of the
    Michigan Administrative Procedures Act, Michigan Secretary of State Ruth Johnson changed
    the Application for Ballot filled out by absentee voters and by voters at the polling place, by
    adding a new checkbox that asks the voter to check "yes" or "no" in answer to the question,
    "Are you a United States Citizen?".  Defendant continued to direct that the citizenship
    checkbox be included on ballot applications used in the August 7, 2012, primary election,
    despite the fact that the Governor had recently vetoed a bill adding the same requirement to
    the Michigan election law, out of concern that it would confuse voters.  As documented
    below, the results were calamitous.  Administration of the citizenship checkbox in the
    primary election was handled differently depending on the jurisdiction and precinct, with
    some voters denied a ballot if they did not complete the checkbox and others able to vote
    after ignoring it.  The confusion was exacerbated when Defendant Johnson changed the rules
    mid-day, with the result that people who voted in the morning were treated differently than
    those who voted later in the day.  The confusion and consternation caused by the checkbox
    and its inconsistent administration delayed, inconvenienced, and probably deterred many
    voters.  The Equal Protection Clause prohibits unjustified interference with the fundamental
    right to vote, particularly when the burden is applied to voters as inconsistently and unequally
    as it was on August 7th.  Defendant's citizenship checkbox violated the Equal Protection
    rights of Michigan voters in the August 7, 2012, primary election.

2.  There can be no question that, unless this court intervenes, Defendant's unconstitutional

1

interference with Michigan voters' rights in the August primary election will be replayed in the November general election – but on a greatly magnified and much more deleterious scale. Defendant has announced her intention to continue the citizenship checkbox in the November election.  However, a number of clerks have questioned her authority and have stated their intention not to include it, while others will. The model absentee ballot application on Defendant Johnson's own official web site does not have the checkbox, nor does the voter application form that clerks download from Defendant's qualified voter file. Applications for Absent Voter Ballots already have been mailed out, some with the checkbox and some without.

3.    With the upcoming presidential election including many important races and ballot questions, we can be sure of two things.  First, lines will be long, ballots will be long, and tempers will be short.  Because of Defendant's intransigent insistence on an unnecessary and unjustifiable requirement, many voters will be inconvenienced, and perhaps prevented or dissuaded from voting.  Second, this impediment to the fundamental right to vote will not burden voters equally.  Voters in some jurisdictions will not see the checkbox, while others likely will be denied a ballot if they do not complete it.  Moreover, in two Michigan jurisdictions covered by Section 5 of the Voting Rights Act, the citizenship checkbox cannot legally be implemented since Defendant did not obtain preclearance for it from the Department of Justice, further resulting in unequal treatment.  Michigan voters are depending on this court to prevent an all but inevitable deprivation of fundamental constitutional rights, by enjoining Defendant's *ultra vires* and unjustifiable insistence on the citizenship checkbox.

2

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§1331 and 1343(a)(3), because this action seeks to redress the deprivation, under color of state law, of rights secured by the U. S. Constitution, and under 28 U.S.C. §§ 2201 and 2202, because this action seeks declaratory relief.

5.  This Court has supplemental jurisdiction, under 28 U.S.C. §1367, over the state law claims asserted herein because they are so related to the federal claims that they are part of the same case and controversy.

6.  Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and Local Rule 83.10.

## PARTIES

7.  Plaintiff Michael Bryanton is the elected Clerk of the County of Ingham, State of Michigan. As Ingham County Clerk, Plaintiff Bryanton is a member of the Ingham County Elections Commission and has various responsibilities under Michigan election law, MCL 168.1, *et seq.*, for conducting elections in Ingham County.

8.  Plaintiff Glenn Rehahn resides in Shelby Township, Michigan. Plaintiff Rehahn is a lawfully registered elector in the State of Michigan, and intends to vote in the Eastern District of Michigan.

9.  Plaintiff Cheryl Merrill resides in Buena Vista Charter Township, Michigan. Plaintiff Merrill is a lawfully registered elector in the State of Michigan. Plaintiff Merrill voted in Buena Vista Charter Township in the August 7, 2012, primary election, and she intends to vote there in the November 6, 2012, general election.

10. Plaintiff Richard L. Robinson resides in East Lansing, Michigan. Plaintiff Robinson is a

lawfully registered elector in the State of Michigan. Plaintiff Robinson is the Executive Director of the Michigan Campaign Finance Network (MCFN). The Michigan Campaign Finance Network is a nonpartisan, nonprofit coalition of organizations and individuals concerned about the influence of money in politics and the need for campaign finance reform in Michigan. MCFN conducts research on campaign contributions and their relationship to election outcomes and issues of public policy, supports access to campaign finance information and develops educational initiatives for the public on the subject of campaign finance reform.

11. Plaintiff Service Employees International Union, Local 517M (SEIU 517M) is a labor organization affiliated with Service Employees International Union, CTW, CLC, with offices in Lansing, Michigan. SEIU Local 517M is the sole and exclusive bargaining representative for public employees in bargaining units throughout Michigan, and represents members who are residents of Buena Vista Township, Michigan and Clyde Township, Michigan, who are registered voters. SEIU Michigan State Council sues on its own behalf and on behalf of its members, many of whom intend to vote in the Eastern District of Michigan.

12. Plaintiff SEIU Michigan State Council is a labor organization with offices in Lansing Michigan. It represents members of Service Employees International Union, CTW, CLC and its four constituent local unions in political and advocacy activity in the State of Michigan. SEIU Michigan State Council sues on its own behalf and on behalf of its members, many of whom and intend to vote in the Eastern District of Michigan. .

13. Plaintiff Latin Americans for Social and Economic Development (LA SED) is a social service organization located in Detroit, Michigan. LA SED provides bilingual, educational,

4

advocacy and other services and assistance to Hispanic and other people in Southwest Detroit.  LA SED has an interest in ensuring that the population it serves has equal and unhindered access to the franchise on election day in November, 2012.

14.     Plaintiff American Civil Liberties Union of Michigan (ACLU of Michigan) is a 501(c)(4) non-profit, non-partisan organization with offices in Detroit, Michigan, that engages in public education and advocacy about civil rights and civil liberties in Michigan.  ACLU of Michigan has over 10,000 members.  ACLU of Michigan has an interest in ensuring that all registered voters in Michigan have the ability to exercise their right to vote on an equal basis, without unnecessary and unjustified interference.  ACLU of Michigan lobbied vigorously in opposition to SB 803, and would participate in the rulemaking that Defendant Secretary of State should be ordered to conduct concerning implementation of the citizenship checkbox on applications to vote.  ACLU of Michigan sues on its own behalf and on behalf of its members, many of whom and intend to vote in the Eastern District of Michigan.

15.     Defendant Ruth Johnson (hereinafter Johnson) is the elected Secretary of State of the State of Michigan.  Defendant Johnson is the chief election officer of the state and has supervisory control over local election officials in the performance of their duties under the provisions of Michigan election law.  Mich. Comp. Laws 168.21.

## BACKGROUND FACTS

*Election Administration in Michigan*

16.     Election administration in the State of Michigan is extremely decentralized, with primary responsibility resting with the clerks in the state's approximately 1,500 cities, townships and villages, with oversight, assistance and support provided by the 82 county clerks, and general

5

supervision provided by the Secretary of State.

17.     While administration is decentralized, the Michigan Election Law, 1954 Pub. Act 116, Mich. Comp. Laws 168.1 *et seq.*, dictates in considerable detail how the local clerks are required to exercise their responsibilities.

18.     Voters in Michigan may vote in person at the local precinct to which they are assigned by virtue of their registration address or by absent voter ballot if they satisfy the statutory requirements for entitlement to an absent voter ballot.  There are approximately 5,200 precincts in the local Michigan jurisdictions, where the elections are administered by elections inspectors, acting under the supervision of the local clerk.

*Voter Registration and Applications to Vote*

19.     Mich. Comp. Laws 168.492 provides: "Each person who has the following qualifications of an elector, or who will have those qualifications at the next election or primary election, is entitled to register as an elector in the township, city, or village in which he or she resides. The person shall be a citizen of the United States; not less than 18 years of age; a resident of the state for not less than 30 days; and a resident of the township, city, or village on or before the thirtieth day before the next regular or special election or primary election."

20.     Mich. Comp. Laws 168.495 requires that the sworn affidavit for one registering to vote contain, *inter alia*, "A statement that the elector is a citizen of the United States."

21.     Mich. Comp. Laws 168.523 mandates precise requirements for a voter to receive a ballot when voting in person.  The voter is required, among other things, to "execut[e] an application showing his or her signature or mark and address of residence in the presence of an election official."  The statute further provides that, "In precincts using voter registration lists, the date

6

of birth may be required to be placed on the application to vote." If a comparison of this information required on the Application to Vote with the precinct records indicates that the person is entitled to vote, the application is approved and the voter is given his or her ballot.

22. Mich. Comp. Laws 168.759 mandates the requirements for an Application for Absent Voter Ballot, which, according to Mich. Comp. Laws 168.759(2), is to be presented in person or by mail to the clerk of the jurisdiction where the voter is registered. Mich. Comp. Laws 168.759(3) provides that an application can be made: (a) by a written request signed by the voter stating the statutory grounds for making the application, or (b) on an absent voter ballot application form provided for that purpose by the clerk of the city, township, or village, or (c) on a federal postcard application. While the application can be made in any of these ways, Mich. Comp. Laws 168.759(5) provides substantial detail on the form and content of the absentee voter ballot application:

> The absent voter ballot application shall be in substantially the following form:
>
> Application for absent voter ballot for:
>
> [ ] The primary or special primary election to be held on ..... , 19... .
> [ ] The election to be held on ..... , 19... .
> (Check applicable election or elections)
>
> I, .................................. , a qualified and registered elector of the ............ precinct of the township of ............ or village of ............ or of the ............ ward of the city of .................................. , in the county of .................................. and state of Michigan, apply for an official ballot, or ballots, to be voted by me at the election or elections as requested in this application.
>
> The statutory grounds on which I base my request are:
>
> [ ] I expect to be absent from the community in which I am registered for the entire time the polls are open on election day.
>
> [ ] I am physically unable to attend the polls without the assistance of another.
>
> [ ] I cannot attend the polls because of the tenets of my religion.

[ ] I have been appointed an election precinct inspector in a precinct other than the precinct where I reside.

[ ] I am 60 years of age or older.

[ ] I cannot attend the polls because I am confined to jail awaiting arraignment or trial.

(Check applicable reason)

Send absent voter ballot to me at:

...........................................

(Street No. or R.R.)

...........................................

(Post Office) (State)

My registered address .......................................

(Street No. or R.R.)

.......................................

(Post Office) (State)

Date.........................................................

I declare that the statements in this absent voter ballot application are true.

.......................................

(Signature)

23. In October 2011, Defendant Johnson announced a package of bills proposing amendments to the election law, which included Senate Bill 803 (SB 803), introduced in the Senate on October 8, 2011. (Exhibit 1)

24. SB 803 amended Mich. Comp. Laws 168.523, the section setting forth the requirements for the Application to Vote, to add that the application must also contain "an affirmative statement by the elector indicating that he or she is a citizen of the United States." It further provided

8

that,"If an elector does not affirmatively state on the application that he or she is a citizen of the United States, that elector shall be challenged by an election inspector.  If the elector fails to state under oath that he or she is a citizen of the United States, that elector shall not be issued a ballot."  (Exhibit 1)

25.    SB 803 also proposed an amendment to Mich. Comp. Laws 168.759, the section on absentee voter ballot applications.  The proposed amendment provided that the absent voter ballot application should include the question, "Are you a United States citizen?" with checkboxes for a yes or no response.  The proposed amendment also provided that the absent voter ballot application should contain the following language:

> **WARNING** If you answer that you are not a citizen of the United States, you will not be issued an absent voter ballot.  If you do not answer the citizenship question on this application, an absent voter ballot will be issued to you, but the ballot will not be counted unless you answer the citizenship question in writing to the clerk before the polls close on election day.

*Defendant's Unlawful and Ultra Vires Actions Regarding Ballot Applications*

26.    Notwithstanding that SB 803 had just been introduced, and had not been reported out of committee, let alone been voted upon or enacted, on October 21, 2011, Defendant Johnson issued a notice to all county and local clerks in her "News You Can Use," Issue 2011-47 (Exhibit 2), directing changes in the Application to Vote and the Application for Absent Voter Ballot, to take effect with the February 28, 2012, presidential primary election.  Her notice stated that the question, "Are you a United States Citizen?" must be added to all Applications to Vote and to Applications for Absent Voter Ballot, with checkboxes for the voter to check either yes or no.

9

27. In Defendant's publication, "Election News," Issue No. 92, dated January 20, 2012, (Exhibit 3), she provided "guidance" in the form of answers to questions posed by county and local election officials. Her earlier notice had provided no direction regarding how to handle applications where voter did not respond to the mandatory question. This "guidance" stated that if a voter did not respond to the citizenship question on the Application for an Absent Voter Ballot, he or she should be given a ballot. The guidance further stated that if a person did not respond to the question on the Application to Vote filled out at the polls he or she should be asked to respond, and if the request was refused, the voter should be sworn in as with the challenge procedure, asked whether he or she is a citizen, and if he or she refused to reply a ballot should not be given.

28. Only 1.2 million voters cast ballots in the February, 2012 primary election, which was a contested presidential election only for the Republican party.

***The Governor Vetoes SB 803 Because It Would Create Voter Confusion***

29. On June 12 and 13, 2012, SB 803 was passed by both houses of the Michigan legislature and ordered enrolled. It was presented to the governor on June 19, 2012. Governor Rick Snyder vetoed the bill on July 3, 2012, stating in his veto message: "I am concerned that Enrolled Senate Bill 803 could create voter confusion among absentee voters." (Exhibit 4, excerpt from Senate Journal No. 61, July 18, 2012)

30. Despite the Governor's veto of SB 803, Defendant Johnson asserted that she would continue to require the affirmation of citizenship checkbox on Applications to Vote and Applications for Absent Voter Ballot.

*The August 7, 2012, Primary Election*

31.     On the eve of the August 7, 2012, primary election, Defendant Johnson issued "a reminder" to local clerks that those using the Application to Vote and Absent Voter Ballot Application containing the question, "Are you a United States Citizen?," should follow the instructions set forth in "Election News," Issue No. 92, that had been issued for the February 28, 2012 presidential primary. ("News You Can Use," Issue 2012-51, August 6, 2012, Exhibit 5)

32.     The continued use of the citizenship affirmation question on the Applications to Vote created controversy and delay on the day of the primary election, when a number of voters refused to answer the question because they were aware of the Governor's veto and/or because they found it redundant, duplicating as it did the affirmation of citizenship required when one registers to voter.  Voters were confused and/or angered by the requirement, and elections inspectors and local clerks were inconsistent in their responses to refusals to answer the question.  A number of voters were not given ballots because they refused to check either yes or no on the citizenship checkbox.

33.     In response to many calls and complaints to local clerks, county clerks, and the Bureau of Elections relating to these problems, at about midday on August 7th, Defendant Johnson issued a "clarification" regarding the citizenship question on the Application to Vote. ("News You Can Use," Issue 2012-52, August 7, 2012, Exhibit 6)  This "clarification" did not clarify, but rather changed, the instructions promulgated for the February 28th primary, by directing that if voters refused to fill out the citizenship checkbox, they be read the following statement: "Under the Michigan Constitution and election laws you must be a citizen of the United States in order to vote."  After being read this statement, the voters were to be given a ballot. (This

11

was a change from the instructions given the day before in "Election News, Issue No. 92," described in paragraph 31.)

34.    These "clarified" instructions were not consistently followed.  Some voters were still being told at the end of the day on August 7th that they could not receive a ballot unless they checked the citizenship box in the affirmative.  It is likely that many local clerks and poll workers were unaware of the "clarification."

35.    The confusion and inconsistency in election administration caused by the citizenship checkbox on August 7th is illustrated be the experiences of voters described in the voter declarations attached as Exhibit 7, which are summarized below:

a.    Plaintiff Richard Robinson attempted to vote in East Lansing, Ingham County, Michigan, at about 9:00 a.m. on August 7, 2012.  As Executive Director of the Michigan Campaign Finance Network, Plaintiff Robinson had followed the election bills in the legislature and knew that the citizenship affirmation had been vetoed by the governor. He refused to check the citizenship checkbox, was told nothing about being challenged and sworn, was refused a ballot, and left the polling place without voting. He called both the Bureau of Elections and the East Lansing clerk and later in the day spoke with reporters from various media outlets.  He heard during the day that new directions had been issued and returned to his polling place at about 4:00 p.m.  He did not fill out the checkbox and was read the statement that he had to be a citizen to vote. (Richard Robinson Declaration)

b.    Plaintiff Glenn Rehahn voted in Shelby Township, in Macomb County, at about 2:00 p.m., at the precinct where he had voted for the previous 20 years.  He refused to check the citizenship checkbox because he thought it was redundant and knew a bill requiring it had been vetoed by the governor. The precinct captain was called over and told him that he had to check the box to get a ballot.  The poll workers did not swear him in accordance with the challenge process, nor did they read him a statement.  They would not give him a ballot and he left the precinct without voting, returned to his home and called the Macomb County Clerk.  He had several phone conversations with county clerk's office personnel before he was told he should return to his precinct and that he would be able to vote.  He returned to his precinct at about 5:00 p.m. and again refused to respond to the citizenship question.  The precinct captain did not read him the statement but rather told him that if he would not answer the question he had to address her and affirm that he was a citizen.  When he did so his application to vote was

12

approved and he was given a ballot. (Glenn Rehahn Declaration)

c.  Will Taylor White voted in Okemos, in Ingham County, at about 2:30 p.m. and refused to respond to the citizenship checkbox because he knew that the legislation requiring the checkbox had been vetoed. The elections inspectors would not give him a ballot and were discussing how to deal with the matter when they received a fax giving them the new instructions. They then read to him the statement that you must be a citizen to vote and gave him the ballot. He was delayed by 20 to 30 minutes and was frustrated and angry about the experience. (Taylor White Declaration)

d.  Robert Anderson voted in Jackson, in Jackson County, at about 1:30 p.m.. He did not check the citizenship checkbox. The poll worker pointed out that he had not checked it and he acknowledged that he had not. The poll worker did not swear him in accordance with the challenge process and did not read him the statement. She simply said she would fill it in for him and did so. (Robert Anderson Declaration)

e.  Ryan Irvin voted in Lansing, in Ingham County, at about 1:00 p.m. He refused to fill out the citizenship checkbox, and was told by the elections inspector that he could not vote unless he checked the box. He told her that he knew that requirement had been vetoed by the governor. She asked him if he thought she knew more than he did. Several attempts were made to call the city clerk, and one of the inspectors reached him. That inspector then told the others that as long as he had identification that verified that he was a citizen he did not have to check the box. He did not have verification but was given a ballot and voted. It took him about ten minutes to vote when there was no line at all. (Ryan Irvin Declaration)

f.  Leroy Pletten, a Sterling Heights resident, was the precinct chairperson at a polling place in Warren, in Macomb County. He was given no information or training regarding the citizenship checkbox. He observed that complaints and questions about the checkbox slowed down the voting process, although the precinct was not busy on primary election day. He is concerned that during the general election, when the lines will be long, that the citizenship question will cause significant delays and that voters will be frustrated and may decide not to vote. (Leroy Pletten Declaration)

g.  Blair Kay Simmons voted in Ferndale, in Oakland County, at the end of the polling period, shortly before 8:00 p.m. She did not respond to the citizenship checkbox question and was told that if she did not respond she would not receive a ballot. She responded to the question because she wanted to vote and the polls were closing. (Blair Kay Simmons Declaration)

h.  Alex Citron went to his polling place in Southfield, Michigan, at about 9:00 a.m. on August 7th. He told the poll worker that he did not have to complete the checkbox because the governor had vetoed SB 802, and even showed her on his cell phone that

13

the bill had been vetoed. The poll worker in charge called the clerk, and after a 2 or 3 minute conversation, told him that he had to check the box, and that if he did not he would have to raise his hand and swear that he was a U.S. Citizen or he would not receive a ballot. At that point, he checked the box and told them he would lodge a complaint with the city clerk and Project Vote. The incident delayed him for about 15 minutes. Mr. Citron called the clerk and complained after he got to work. When his parents voted at around 3:30 p.m. at the same precinct, his father refused to check the box, and refused to answer whether he was a citizen, and was issued a ballot anyway. His mother did not complete the checkbox, and nothing was said to her. (Alex Citron Declaration)

i.   Travis Boak went to his precinct in Okemos, Ingham County, Michigan, to vote at around 1:30 p.m.  When asked by a poll worker why he had not completed the citizenship checkbox, Mr. Boak said, "No, I know the law, and I do not have to fill out that question." He was asked if he wanted to talk to the city clerk. The precinct captain put Boak on his cellphone with the city clerk, who told him that he did not have to answer the question but would have to be read a statement. While Boakt sat at a table drinking a glass of water, the poll worker talked with the city clerk for several minutes. After the statement was read to him, he was allowed to vote.  It took Mr. Boak twenty minutes to vote. He estimates that the checkbox caused a delay of about 15 minutes. (Travis Boak Declaration)

j.   Ron French voted in Okemos, Michigan at around 8:00 a.m. When he expressed to the poll worker his surprise that the checkbox was on the application, because the governor had vetoed it, the poll worker told him that the veto had been overridden by the legislature, and that he could not vote unless he checked the box. He checked the box and voted. (Ron French Declaration)

k.   Tiffany Esshaki voted in Clawson, Michigan at around 1:00 p.m..  She was told that she had to complete the application to vote.  While she felt uncomfortable filling out the citizenship checkbox, she did so because she felt that arguing would only delay her further.

l.   Michael Edwin voted at the Grosse Pointe Farms City Hall on August 7th.  He was given an Application to Vote with no citizenship checkbox.  He voted quickly and without incident. (Michael Edwin Declaration)

36.   Jocelyn Benson is an attorney and she is the Director of the Michigan Center for Election Law and the Co-Manager of the Michigan Election Protection Program for the Lawyers' Committee for Civil Rights Under Law, a 501(c)(3) organization whose mission is to secure equal justice

for all under law. (Jocelyn Benson Declaration, Exhibit 8, ¶¶ 3-4) Benson collected complaints from voters received by the Lawyers' Committee's national voter complaint telephone hotline during the August 7, 2012, Michigan primary election, as well as complaints she and other election day volunteers received personally and that she monitored on Facebook. Ms. Benson's log (Exhibit A of the Jocelyn Benson Declaration, Exhibit 8) includes the following:

a.     In Ingham County, the checkbox requirement was applied inconsistently. For example, voters in Lansing were told that they had to complete the checkbox in order to vote, while a voter in Delhi Township did not have to reaffirm her citizenship.

b.     A voter in Detroit reported that he was required to complete the checkbox in order to receive a ballot, even though he voted hours after Defendant Johnson changed the rules and permitted voters to obtain a ballot without checking the box.

c.     In Oakland County, a voter in Rochester was told she had to complete the checkbox in order to vote, while a voter in West Bloomfield Township was given a ballot after arguing with the poll worker.

***Defendant's Refusal to Remedy The Problem***

37.     On September 4, 2012, the Michigan Election Coalition, a group of non-profit organizations supporting access to the ballot, wrote to Defendant Johnson, pointing out the lack of legal authority for her actions and the confusion that they had caused at the August primary. The letter asked her immediately to direct the removal of the citizenship question from the Application for Absent Voter Ballot and to direct the removal of the question on the Application to Vote to be used at the November, 2012 election.

38.     Defendant Johnson did not respond directly to the Michigan Election Coalition's request. Instead she responded through the media by declaring her intention to continue directing clerks to include the citizenship affirmation on the Application to Vote at the November election, asserting through a spokesperson that she has a right to include the citizenship checkbox

15

pursuant to her general authority to prescribe the use of forms.

39.     Upon information and belief, Defendant Johnson intends to include the citizenship affirmation checkbox on the Application to Vote for the November 6, 2012, general election.

## COUNT I

### DEPRIVATION OF EQUAL PROTECTION
### IN VIOLATION OF THE FOURTEENTH AMENDMENT TO
### THE CONSTITUTION OF THE UNITED STATES

40.     The right to vote is a fundamental right, "preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886).  "[E]specially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Harper v. Virginia Board of Elections*, 383 U.S. 663, 667 (1966)(quoting, *Reynolds v. Sims* 377 U.S. 533, 561-562 (1964)).  "[T]he right to vote includes the right to have one's vote counted on equal terms with others." *League of Women Voters of Ohio v Brunner,* 548 F.3d 463, 476 (6th Cir. 2008)(citing *Bush v. Gore*, 531 U.S. 98 (2000)).  "[S]tate actions in election processes must not result in 'arbitrary and disparate treatment' of votes." *Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011)(quoting, *Bush v. Gore*, 531 U.S. at 104-105).

41.     For the reasons stated herein, Plaintiffs justifiably anticipate that confusion and inconsistent application regarding the citizenship checkbox on the Application to Vote will occur at the November 6, 2012, general election.  As demonstrated in the August 7, 2012, primary election, the citizenship checkbox will delay, and in some cases, hinder registered electors from voting.

Those effects will be significantly magnified in the general election, and due to confusion and inconsistency in administration, they will apply to Michigan voters unequally.

42. Applications for Absent Voter Ballots are being requested and returned now and absent voter ballots will be ready for mailing on or about September 22, 2012, but Defendant Johnson has provided no directions regarding these Applications for months.

43. Defendant Johnson has created confusion among county and local clerks regarding the Applications for Absent Voter Ballots. The most recent instruction from the Bureau of Elections came in "Election News," Issue No. 92, dated January 20, 2012 (Exh. 3). This directive was referenced in the August 6, 2012, "News You Can Use" issue (Exh. 4), but neither repeated nor expanded upon. "Election News," Issue No. 92 (Exhibit 3) advised clerks that the citizenship checkbox was to be included on both Applications to Vote and Applications for Absent Voter Ballot. With regard to the Application for Absent Voter Ballot, it directed that if the voter failed to respond to the citizenship question the voter was to be issued a ballot. If the voter responded no to the citizenship question the clerk was instructed not to issue a ballot, but to notify the voter that he should contact the clerk if this negative response were incorrect.

44. While refusing to direct local clerks to cease requiring the citizenship checkbox on the Application for Absent Voter Ballot, Defendant Johnson does not include it on the Application for Absent Voter Ballot which can be downloaded by voters from her own website. (Exhibit 9, downloaded from http://www.michigan.gov/sos/)

45. The citizenship checkbox is not included on the form which can be downloaded by clerks from the qualified voter file maintained by the Secretary of State.

17

46.    Laura Misumi, a law clerk working for the Service Employees International Union (SEIU), recently conducted a telephone survey of Michigan city and township clerks in Ingham, Macomb, Washtenaw and Wayne Counties, and visited their web sites, in order to determine how the citizenship checkbox requirement is being administered in those for the November 6, 2012, general election in those counties.  (Declaration of Laura Misumi, Exhibit 10)

47.    Misumi's survey indicates that many county web sites, including Macomb, Oakland and Wayne, link to the Secretary of State's online form and voters from around the state can download this form, complete it, and send it to their local clerk.  Defendant Johnson is, thus, directing that the forms include the citizenship checkoff question while she herself does not include it.

48.    Misumi's survey indicates that in the Michigan counties she examined, there is no consistent practice regarding inclusion of the citizenship checkbox on Applications for Absent Voter Ballot.  Based on Laura Misumi's survey of clerk web sites, some applications have the citizenship checkbox and some do not.  For example, as of the first week of September, 2012, 7 out of 43 jurisdictions in Wayne County posted absent voter ballot applications that contained the citizenship checkbox; 4 out of 21 jurisdictions in Macomb County posted absent voter ballot applications that contained the citizenship checkbox; 5 out of 25 jurisdictions in Washtenaw County posted absent voter ballot applications that contained the citizenship checkbox; and 16 out of 51 jurisdictions in Oakland County posted absent voter ballot applications that contained the citizenship checkbox;.  (Exhibit 10, ¶ 3)

49.    Misumi's survey also indicates that clerks are confused, unclear and inconsistent as to how they should respond if the applicant does not answer the citizenship question.  (Exhibit 10)

18

While the Secretary of State's January directive stated that persons who did not respond were to be given a ballot, some clerks report having received different guidance from the Bureau of Elections employees. Furthermore, the fact that a question is included, while no answer is required, is confusing for poll workers and to voters. For both, the fact that a question is required suggests that an answer is required.

50. Election supplies are often ordered by county clerks for use by the local jurisdictions within their counties although some local jurisdictions order their supplies directly. Macomb County, Washtenaw County and Ingham County are ordering Applications to Vote without the citizenship checkbox and, on information and belief, others will do so as well. (Bryanton Declaration, Exhibit 11) (*Detroit News*, 9/14/12, Exhibit 12)

51. Thus, some local jurisdictions will have the citizenship checkbox on their Applications to Vote at polling places, while others will not.

52. The controversy over the citizenship checkbox, exacerbated by Defendant Johnson's intransigence in the face of Governor Snyder's veto, has brought the issue to the attention of the public, and there is widespread misunderstanding of the matter, with many voters believing that they will be required to provide proof of citizenship in order to vote.

53. Many people do not have proof of citizenship or would be able to acquire such proof only with difficulty.

54. It is reasonable to anticipate that this controversy and the consequent misunderstanding will cause some voters to choose not to vote if they don't have proof of citizenship.

55. As set forth above, the citizenship checkbox requirement on the Application to Vote caused considerable confusion and delay during the August 7, 2012, primary election, when turnout

was low and lines generally were not long. It is anticipated that voter turnout for the November 6, 2012, presidential election will be very high. Moreover, while the primary ballot was short, the general election ballot will be very long. In addition to the election of the president, a United States Senator, Congressional Representatives, and judicial elections for the Michigan Supreme Court, Circuit Courts and District Courts, it will include six statewide ballot proposals and, in many jurisdictions, county and local proposals. In Detroit, for example, the ballot will include eighteen proposals; six state proposals, six county proposals and six city proposals. This will require a two sheet ballot and will take more time to vote.

56. With turnout high and lines already long, the disruption and delay inevitably caused by the citizenship checkbox will have the effect of depriving some qualified electors of their fundamental right to vote, as many voters, because of school, work or family obligations will be forced to leave polling places where the lines are too long, or they will be deterred from voting at all due to misinformation and confusion regarding the requirement.

57. Because Defendant Johnson's citizenship checkbox has been and will be included on the Application to Vote will in some jurisdictions but not in others, some Michigan citizens will be deprived of their constitutionally protected right to participate in the election on the same basis as other Michigan citizens.

58. The citizenship checkbox requirement and the burden it creates is not justified by any legitimate – much less compelling – state interest. Voters must affirm citizenship when they register to vote. There is no need for a registered voter to reaffirm citizenship with each ballot he or she casts. Nor will the checkbox serve as a meaningful deterrent to non-citizens seeking to vote unlawfully.

59. For all of the above reasons, the citizenship checkbox requirement violates the Equal Protection Clause of the U.S. Constitution as applied under the Fourteenth Amendment to the U.S. Constitution.

## COUNT II

## DEFENDANT'S VIOLATION OF VOTING RIGHTS ACT SECTION 5

60. Section 5 of the Voting Rights Act (VRA), 42 U.S.C. § 1973c(a), requires for certain named jurisdictions that a change in a "qualification or prerequisite to voting, or standard or practice" may not be enacted without preclearance obtained by petition to a three judge panel or by permission of the United States Attorney General.

61. The requirement of citizenship affirmation required by Defendant Johnson is a "qualification or prerequisite to voting, or standard or practice" with respect to voting for which preclearance is required.

62. There are two jurisdictions in Michigan, Buena Vista Township in Saginaw County and Clyde Township in Allegan County, for which preclearance under VRA Section 5 is required.

63. Defendant Johnson did not seek preclearance prior to the implementation of this changed voting requirement in these two townships.

64. Defendant's failure to obtain preclearance violated Section 5 of the VRA. Therefore, the citizenship checkbox cannot lawfully be applied to voters in the two VRA Section 5 jurisdictions.

## COUNT III

## DEFENDANT EXCEEDED HER AUTHORITY
## IN VIOLATION OF MICHIGAN ELECTION LAW

65.     Mich. Comp. Laws 168.31 sets forth the duties of the Secretary of State with regard to

elections and provides, at section 1(a), that the secretary shall, "subject to subsection (2), issue

instructions and promulgate rules pursuant to the administrative procedures act of 1969, 1969

PA 306, Mich. Comp. Laws 24.201 to 24.328, for the conduct of elections and registrations

in accordance with the laws of this state," and, at section 1(e), that the secretary shall,

"prescribe and require uniform forms, notices, and supplies the secretary of state considers

advisable for use in the conduct of elections and registrations."

66.     Forms prescribed by Defendant Johnson pursuant to her general authority cannot differ from

those specific forms mandated by the legislature.

67.     As set forth above, the legislature has directed with specificity the content of the application

for an absent voter ballot, Mich. Comp. Laws 168.759, and the content of the application to

vote at the polling place.  Mich. Comp. Laws 168.523..  Neither local nor county clerks can

change the content of the applications dictated by the legislature.  Nor can the Secretary of

State.

68.     That the content of the applications was a matter for the legislature is most clearly

demonstrated by the fact that amendments to both of these statutory sections were proposed

and passed by the legislature. The statutory changes were vetoed by the Governor.  The

Secretary of State has no authority to override or ignore the gubernatorial veto.

69.     The actions of the Secretary of State, in dictating new content for the Applications to Vote and

22

for an Absent Voter Ballot, are *ultra vires* and violate Michigan election law Sections 523 and 759, Mich. Comp. Laws 168.523 and 168.759, wherein the legislature specified the content of the applications.

## COUNT IV

## DEFENDANT'S VIOLATION OF THE MICHIGAN
## ADMINISTRATIVE PROCEDURES ACT AND MICHIGAN ELECTION LAW

70.  Michigan election law, Section 31, Mich. Comp. Laws 168.31, sets forth the duties of the Secretary of State with regard to elections and provides, at section 1(a), that the secretary shall, "subject to subsection (2), issue instructions and promulgate rules pursuant to the administrative procedures act of 1969, 1969 PA 306, Mich. Comp. Laws 24.201 to 24.328, for the conduct of elections and registrations in accordance with the laws of this state."

71.  The Michigan Administrative Procedures Act (MAPA), Mich. Comp. Laws 24.208(1), requires the publication of proposed administrative rules in the Michigan register and notices of public hearings on the proposed rules. Where these procedural requirements are not followed a rule is invalid under Michigan law.

72.  Defendant Johnson's directives and instructions regarding inclusion of the citizenship on the Applications to Vote and for Absent Voter Ballots are rules for purposes of the MAPA.

73.  Even if she had authority to direct inclusion of the citizenship checkbox on the Applications to Vote and Absent Voter Ballot Applications, which she does not, Defendant failed to publish the rules regarding the citizenship checkbox in the Michigan register and the public was given no opportunity to comment on them.

74.  Defendant Johnson's actions regarding the citizenship checkbox violate Michigan election law,

23

Mich. Comp. Laws 168.31, and the MAPA, Mich. Comp. Laws 24.208(1), and therefore they are invalid and unenforceable.

**THE INJUNCTIVE RELIEF REQUESTED BELOW IS NECESSARY TO AVERT A WIDESPREAD VIOLATION OF CONSTITUTIONAL RIGHTS IN THE UPCOMING ELECTION**

75.   The constitutional right of many Michigan voters to vote on an equal basis with other voters will be violated unless the injunctive relief requested herein issues.

76.   For the following reasons, it is too late to correct the damage done by Defendant Johnson's *ultra vires* and unlawful insistence on the citizenship checkbox, other than by enjoining her from continuing it and by ordering her to remedy its effects on the November election:

   a.   It is too late for Defendant Johnson to promulgate the citizenship checkbox voting procedure in conformity with the Michigan Administrative Procedure Act's rulemaking requirements before the November election.

   b.   Many Applications for Absent Voter Ballot have already issued, before and after the August primary election.  They continue to be mailed or given to voters now, some with the checkbox and some without.

   c.   Applications to vote in the two VRA Section 5 jurisdictions cannot lawfully contain the checkbox, since Defendant has failed to obtain preclearance and likely cannot do so in time, inevitably resulting in unequal application of voting procedures absent an injunction.

   d.   Some county and local clerks have publically refused to include the checkbox on applications, questioning Defendant's legal authority to insist on it, which will result

24

in inconsistent and unequal application of voting requirements, unless the requested injunctive relief is granted.

e.    As documented in the Laura Misumi and Michael Bryanton Declarations (Exhibits 10, 11) and elsewhere, some clerks already have ordered ballot applications without the checkbox or plan to use old stock not containing the checkbox, again resulting in uneven treatment of voters.

f.    The only way to avoid the interference and delay that will confront November voters who question the validity of, or who are intimidated by, the citizenship checkbox is for Defendant Johnson to discontinue it and publicly disavow it.

77.    Unless an injunction is granted, Michigan voters' right to equal exercise of the franchise will be irreparably harmed, as it was in the August primary election. On the other hand, Defendant Johnson has no legal right to add the citizen checkbox and will suffer no harm if it is enjoined, since there is no legitimate government interest in having voters reaffirm the U.S. citizenship they swore to when they registered to vote. The public interest in equal and unhindered access to the franchise, as well as the public's desire to avoid long lines and delay at the polling place, would be served by the injunctive relief requested below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court:

A.    Declare that the requirement that the citizenship checkbox be included on Applications to Vote and Applications for Absent Voter Ballot deprives citizens of Equal Protection of the laws and violates the Fourteenth Amendment to the United States Constitution.

B.    Declare that the requirement that the citizenship checkbox be included on Applications

25

to Vote and Applications for Absent Voter Ballot violates Section 5 of the National
Voting Rights Act because it was adopted without the preclearance required by that act.

C.   Declare that Defendant Johnson is without authority under Michigan law to require that
the citizenship checkbox be included on Applications to Vote and Applications for
Absent Voter Ballot.

D.   Declare that Defendant Johnson additionally violated the Michigan Administrative
Procedures Act and Michigan election law by failing to issue a new rule in accordance
therewith.

D.   Issue a temporary restraining order, preliminary and permanent injunction enjoining
Secretary of State Ruth Johnson, and all those acting in concert or cooperation with
Defendant and her agents, from henceforth requiring or permitting inclusion of the
citizenship checkbox on the Application to Vote and Application for Absent Voter
Ballot.

E.   Order Defendant Johnson immediately to notify and instruct all county and local clerks
that the citizenship checkbox is not to be included on Applications to Vote or
Applications for Absent Voter Ballot, and that the checkbox is to be removed or
obscured on Applications to Vote where necessary.

F.   Order Defendant Johnson immediately to give statewide notice to voters, in periodicals
with major circulation and on her website, that voters will not be required to complete
the citizenship checkbox or otherwise take any additional action as a result of not
completing a citizenship checkbox in order to obtain a ballot and vote in the November
6, 2012, general election.

26

G.    Order Defendant to reimburse Plaintiffs for their reasonable attorneys fees and costs

incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

H.    Grant such other relief as the Court deems equitable and proper.

Respectfully submitted,

Sachs Waldman, P.C.

Judith A. Scott                              _s/ Mary Ellen Gurewitz_
Maryann Parker                            Mary Ellen Gurewitz (P25724)
Attorneys for SEIU Local 517M and
SEIU Michigan State Council           _s/ Andrew Nickelhoff_
1800 Massachusetts Avenue, NW     Andrew Nickelhoff (P37990)
Washington, DC 20036                    Attorneys for Plaintiffs
(202) 730-7734                              1000 Farmer St.
maryann.parker@seiu.org               Detroit, MI 48226
                                                    (313) 496-9429
                                                    megurewitz@sachswaldman.com
                                                    anickelhoff@sachswaldman.com

                                                    Daniel S. Korobkin (P72842)
                                                    Michael J. Steinberg (P43085)
                                                    Kary L. Moss (P49759)
                                                    American Civil Liberties
                                                    Fund of Michigan
                                                    2966 Woodward Ave
                                                    Detroit, MI 48201
                                                    (313) 578-6800
                                                    dkorobkin@aclumich.org

Dated: September 17, 2012

27